1   James M. Dowd (SBN 259578)
    James.Dowd@wilmerhale.com
2   WILMER CUTLER PICKERING
       HALE AND DORR LLP
3   350 South Grand Avenue, Suite 2100
    Los Angeles, CA 90071
4   Tel: (213) 443-5300 / Fax: (213) 443-5400

5   Louis W. Tompros (*pro hac vice*)
    Louis.Tompros@wilmerhale.com
6   WILMER CUTLER PICKERING
       HALE AND DORR LLP
7   60 State Street
    Boston, MA 02109
8   Tel: (617) 526-6000 / Fax: (617) 526-5000

9   *Attorneys for Defendant ARJOT SANDHU*

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12   FOCAL POINT FILMS, LLC, a California       Case No.  3:19-cv-02898-JCS
     limited liability company,
13                                              **ARJOT SANDHU'S OPPOSITION TO**
                   Plaintiff/Counter-Defendant, **FOCAL POINT FILMS, LLC'S AND**
14                                              **BRYAN GIBEL'S MOTION**
            vs.                                 **REGARDING ISSUES TO BE TRIED TO**
15                                              **THE JUDGE OR JURY**
     ARJOT SANDHU, an individual,
16
                   Defendant/Counter-Plaintiff.
17   ─────────────────────────────────────
18   ARJOT SANDHU, an individual,

19                 Defendant/Counter-Plaintiff,

20          vs.

21   FOCAL POINT FILMS, LLC, a California
     limited liability company,
22
                   Plaintiff/Counter-Defendant,
23
     and BRYAN GIBEL, an individual,
24
                   Counter-Defendant.
25

26

27

28

─────────────────────────────────────

### **Table of Contents**

Statement of the Issues.................................................................................................1

Factual Background .....................................................................................................2

Argument .....................................................................................................................4

    I.   Ms. Sandhu's Unjust Enrichment Claim Is A Claim At Law For Money Damages ...........4

        A.  Ms. Sandhu's Properly Pled Unjust Enrichment Claim Seeks Money Damages .........4

    II.  Ms. Sandhu Is Entitled to a Jury Trial on Her Unjust Enrichment Claim .........................8

        A.  Unjust Enrichment Is Comparable to the Common Law Action of Assumpsit, a Claim at Law.......................................................................................................9

        B.  Mr. Gibel's Reliance On *Commerce Planet* Is Misplaced...........................................11

        C.  The Remedy Sought By Ms. Sandhu is Likewise Legal in Nature ............................12

    III.  Common Fact Questions Must Be Tried To The Jury ..................................................14

        A.  Bifurcating the Trial to Hear the Parties' Declaratory Judgment Claims First Would Violate Supreme Court Precedent............................................................14

        B.  Common Fact Questions Predominate Both Claims Here...........................................15

        C.  Severing Ms. Sandhu's Claims and Holding a Jury Trial on Only One Would Be a Waste of Judicial Resources and Undermine the Principal of Judicial Economy .......18

Conclusion .................................................................................................................19

**<u>Table of Authorities</u>**

**Page(s)**

**Cases**

*In re Arizona Theranos, Inc., Litig.*,
   308 F. Supp. 3d 1026 (D. Ariz. 2018) ..................................................................................4

*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ............................................................................................10

*Bayer v. Neiman Marcus Group, Inc.*,
   861 F.3d 853 (9th Cir. 2017) ............................................................................................10

*Beacon Theatres, Inc. v. Westover*,
   359 U.S. 500 (1959)................................................................................................1, 9, 16

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
   711 Fed. App'x 380 (9th Cir. 2017) ..................................................................................5

*Calnetics Corp. v. Volkswagen of Am., Inc.*,
   532 F.2d 674 (9th Cir. 1976) ............................................................................................16

*FTC v. Commerce Planet, Inc.*,
   815 F.3d 593 (9th Cir. 2016) ...................................................................................9, 11, 12

*Dairy Queen, Inc. v. Wood*,
   369 U.S. 469 (1962)................................................................................................ *passim*

*Dastgheib v. Genentech*,
   457 F. Supp. 2d 536 (E.D. Pa. 2006) .........................................................................9, 13, 14

*Datel Holdings LTD. v. Microsoft Corp.*,
   No. C-09-05535 EDL, 2010 WL 3910344 (N.D. Cal. Oct. 4, 2010)......................................19

*ESG Capital Partners, L.P. v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .................................................................................4, 16, 17

*Everett H by & through Havey v. Dry Creek Joint Elementary Sch. Dist., Bd. of
   Trustees of Dry Creek Joint Elementary Sch. Dist.*,
   No. 2:13-CV-00889-MCE-DB, 2017 WL 2081217 (E.D. Cal. May 15, 2017) ...............18, 19

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998)........................................................................................5, 13

*GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*,
   No. C 09-01484 SI, 2010 WL 1729400 (N.D. Cal. Apr. 27, 2010).........................19

*Gospel Missions of Am. v. City of Los Angeles*,
   328 F.3d 548 (9th Cir. 2003) ....................................................................................7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)......................................................................................6, 11, 12

*Jordan v. Wonderful Citrus Packing LLC*,
   No. 1:18-CV-00401-AWI-SAB, 2018 WL 4350080 (E.D. Cal. Sept. 10, 2018).............10, 11

*Lompa Farms, Inc. v. Anchor Warehouse Servs. LLC*,
   No. 5:11-CV-00062 EJD, 2012 WL 967977 (N.D. Cal. Mar. 21, 2012)..............................4, 5

*Lytle v. Household Mfg., Inc.*,
   494 U.S. 545 (1990)....................................................................................................1

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946)..................................................................................................12

*Pradier v. Elespuru*,
   641 F.2d 808 (9th Cir. 1981) ...................................................................................15

*Quiksilver, Inc. v. Kymsta Corp.*,
   No. CV 02-5497-VBF(MCX), 2007 WL 9712164 (C.D. Cal. Dec. 5, 2007) .........................9

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
   531 F.3d 962 (9th Cir. 2008) ...............................................................16, 17, 18

*Ross v. Bernhard*,
   396 U.S. 531 (1970)..................................................................................................16

*Simler v. Conner*,
   372 U.S. 221 (1963)..................................................................................................15

*Spinelli v. Gaughan*,
   12 F.3d 853 (9th Cir. 1993) ....................................................................................10

iii

*Sweeney v. Chang*,
   No. 216CV07240CASRAOX, 2019 WL 1431583 (C.D. Cal. Mar. 26, 2019) ......................20

*Toyrrific, LLC v. Karapetian*,
   606 Fed. App'x 365 (9th Cir. 2015) ..........................................................................................8

*Toyrrific, LLC v. Karapetian*,
   No. 2:12-CV-04499-ODW, 2013 WL 1628614 (C.D. Cal. Apr. 16, 2013) ............................8

*Traxler v. Multnomah Cty.*,
   596 F.3d 1007 (9th Cir. 2010) ................................................................................................20

*Tull v. United States*,
   481 U.S. 412 (1987)...................................................................................................................9

*Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*,
   502 U.S. 93 (1991)....................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 39(c) ......................................................................................................................20

U.S. Const. amend. VII...................................................................................................................15

iv

### Introduction

Ms. Sandhu's unjust enrichment claim is a claim at law seeking money damages that the Seventh Amendment requires be tried to a jury.  The facts underpinning this legal claim are largely (if not wholly) the same as the facts in dispute for the parties' respective copyright claims.  Thus, under well-established Supreme Court precedent, the facts common to both claims must be decided by a jury.  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73, 476-77, 479 (1962).

After the jury has decided those common facts, if there are any remaining factual disputes that relate solely to the parties' copyright claims, those remaining disputed facts can be tried to the Court.  *Dairy Queen*, 369 U.S. at 479 ("Since these issues are common with those upon which respondents' claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims."); *see also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 550 (1990) ("When legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n. 11 (1974))). This procedure is quite common, such as where a plaintiff seeks both damages and injunctive relief.  That is presumably why this Court set this case for a jury trial from the outset.  *See* Dkt. No. 53 (12/12/19 Case Management and Pretrial Order) at 1-5.

Bryan Gibel's and Focal Point Films, LLC's (collectively, "Mr. Gibel") attempt to deny Ms. Sandhu her Seventh Amendment rights should be rejected.

### Statement of the Issues

1. Whether the Court should reconsider its order setting this case for a jury trial, when Ms. Sandhu is pursuing a claim entitling her to the legal remedy of monetary damages; and

2. Whether, if any part of Ms. Sandhu's monetary damages claim entitles her to a jury trial, the Court should bifurcate, when all claims share common operative facts.

### **Factual Background**

Counter-Plaintiff Arjot ("Arie") Sandhu is a director, producer, and internationally published photographer and director of photography who, together with Counter-Defendant Bryan Gibel, spent over a year and a half creating the documentary film Sign My Name to Freedom. *See* Dkt. No. 20 ("Amended Answer") at Counterclaims ¶¶ 8-14.  Ms. Sandhu and Mr. Gibel met and bonded over their shared visions for a film on the same subject—the life of Betty Reid Soskin, a civil rights icon and National Park Ranger. *Id*. at Counterclaims ¶¶ 16-19.

When Ms. Sandhu and Mr. Gibel met in March 2017, Mr. Gibel had been working on a documentary about Reid's Records, a record store that Ms. Soskin's husband started in 1945. *Id*. at Counterclaims ¶ 18.  Before she met Mr. Gibel, Ms. Sandhu had herself contemplated a film about Ms. Soskin and filmed an interview with Ms. Soskin in pursuit of her project. *Id*. at Counterclaims ¶ 17.  Ms. Sandhu and Mr. Gibel began a collaboration that ultimately spanned all aspects of the creative direction, planning, production, shooting, financing, and publicity of the Film. *Id*. at Counterclaims ¶¶ 11-12, 22-23.  Mr. Gibel later initiated a romantic relationship, the end of which led to this dispute. *Id*. at Answer ¶ 16.

Neither Ms. Sandhu nor Mr. Gibel ever signed any sort of employment contract with one another.  Nor did Ms. Sandhu sign such a contract with Focal Point. *Id*. at Counterclaims ¶ 33. Instead, Mr. Gibel and Ms. Sandhu proceeded as partners and deferred payment for their work on the project—a partnership that Mr. Gibel acknowledged in writing in multiple applications for grant funding for the Film. *Id*. at Counterclaims ¶¶ 33, 60-63.

Ms. Sandhu was instrumental in conceiving of, and executing, the storyline, direction, and production of the Film. *Id*. at Counterclaims ¶¶ 21-22.  Together, Ms. Sandhu and Mr. Gibel changed the vision of the Film from a straightforward historical biopic about Reid's Records and the Soskin family to a verité musical documentary focused on Ms. Soskin's original music with a narrative through-line featuring the collaboration of Ms. Soskin with multiple generations of California musicians to rescore her music in new and different formats, including for performance by a youth orchestra and full symphony. *Id*. at Counterclaims ¶¶ 18-32.  Ms.

2

Sandhu and Mr. Gibel together conceived of, implemented, produced, and shot this concept; orchestrated the performance of Ms. Soskin's music; and directed the filming of its performance. *Id*. Ms. Sandhu's narrative and other contributions brought the Film the recognition and financial success that had previously eluded Mr. Gibel.  During their partnership, the Film received tens of thousands of dollars in grant funding, was featured at industry events, and gained considerable publicity.  *Id*. Mr. Gibel himself repeatedly acknowledged Ms. Sandhu's central role on the project.  *Id*. at Counterclaims ¶¶ 28-32, 55.  For example, in multiple applications for funding, Mr. Gibel and Ms. Sandhu each agreed that the other jointly "own[ed the] copyright of the production" detailed in the application and had "artistic, budgetary, and editorial control" of the Film.  *See* ITVS_00040; *see also* ITVS_00085 (applications for Independent Television Service "Open Call" funding).

Unfortunately, when Ms. Sandhu asked Mr. Gibel to put his romantic intentions on hold as production neared its end, Mr. Gibel grew increasingly acrimonious. Amended Answer at Counterclaims ¶¶ 24-33.  He increasingly clashed with Ms. Sandhu over their collaboration, and sought to appropriate for himself her share of credit for the Film.  For example, in late 2018, Mr. Gibel attempted to pressure Ms. Sandhu to retroactively sign an agreement that would effectively relegate her to a cinematographer on the Film.  *Id*. at Counterclaims ¶¶ 33-35.  When Ms. Sandhu declined, Mr. Gibel secretly changed passwords they had jointly used to control access the Film's website, and excluded Ms. Sandhu from a Google Drive repository where Ms. Sandhu and Mr. Gibel had stored film footage, promotional materials, grant applications, and other documents pertaining to the Film.  *Id*. at Counterclaims ¶¶ 37-41.  He similarly worked to prevent Ms. Sandhu from attending an event at which the Film could have been pitched to potential investors and funders.  *Id*. at Counterclaims ¶¶ 42-47.

Mr. Gibel subsequently sued Ms. Sandhu, seeking declaratory judgment of copyright ownership –  aggressively (and improperly) seeking a default judgment while Ms. Sandhu was attempting to retain counsel.  *See* Dkt. No. 10.  When Ms. Sandhu ultimately was able to retain counsel, she answered Mr. Gibel's complaint and filed counterclaims for (1) a declaratory

3

judgment that the parties are joint authors of the Film, and (2) an unjust enrichment claim for money damages.  *See* Amended Answer.

<u>**Argument**</u>

**I.    Ms. Sandhu's Unjust Enrichment Claim Is A Claim At Law For Money Damages**

Mr. Gibel has already previously conceded that Ms. Sandhu's unjust enrichment claim is a proper claim for money damages.  Specifically, Mr. Gibel represented to this Court:  "Focal Point also does not move to dismiss Sandhu's claim for ***unjust enrichment***, as Focal Point has always acknowledged Sandhu's ***right to be paid*** for her work."  Dkt. No. 31 at 1.[1]  By acknowledging Ms. Sandhu's "right to be paid," Mr. Gibel conceded that her "unjust enrichment" claim is a claim at law for money damages—the defining characteristic of a claim at law.  *See Dairy Queen*, 369 U.S. at 476 ("Petitioner's contention . . . is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal.  We agree with that contention.").  His attempt to reverse course now is improper and baseless.

**A.    Ms. Sandhu's Properly Pled Unjust Enrichment Claim Seeks Money Damages**

The elements of unjust enrichment under California law are straightforward:  "[t]o allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, L.P. v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1057 (D. Ariz. 2018) ("Under California law, 'the elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another.'" (citation omitted)); *Lompa Farms, Inc. v. Anchor Warehouse Servs. LLC*, No. 5:11-CV-00062 EJD, 2012 WL 967977, at *3 (N.D. Cal. Mar. 21, 2012) (stating elements as "(1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another.").

Ms. Sandhu's counterclaim pled "a short and plain statement" of these elements, together with a demand for relief in the form of money damages against Mr. Gibel.  Amended Answer at

---

[1] Emphasis appearing in quotations in this brief has been added unless otherwise indicated.

Counterclaims ¶¶ 60-63 and Prayer for Relief ¶ 3; *see also* Federal Rule 8(a).  Ms. Sandhu pled, for example, that she "***did not receive compensation*** for her services as an author, producer, cinematographer, director, editor, photographer, or promoter of the Film" (Counterclaim ¶ 62), and that Mr. Gibel retained these benefits "without having compensated her for the reasonable value of her contributions."  *Id*. at ¶ 63.  Ms. Sandhu then prayed for relief in the form of money "damages, including but not limited to compensatory and punitive damages, together with pre-judgment and post-judgment interest, in an amount to be determined at trial."  *Id.* at Prayer for Relief ¶ 3.  Ms. Sandhu thus stated a claim at law for money damages.  *Dairy Queen*, 369 U.S. at 476 ("as the complaint requests a money judgment it presents a claim which is unquestionably legal"); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (noting "the 'general rule' that monetary relief is legal" in the Seventh Amendment analysis (citation omitted)); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 711 Fed. App'x 380, 384 (9th Cir. 2017) (nonprecedential) (concluding that a claim for restitution in an action under the Employee Retirement Income Security Act "sought legal rather than equitable relief").

Mr. Gibel attempts to recast Ms. Sandhu's unjust enrichment claim by contending that she did not state "that she was seeking as damages the reasonable value of her services" in her Amended Answer or Initial Disclosures, and instead sought solely "an accounting and disgorgement of profits."  *See* Plaintiff and Counter-Defendant Focal Point Films, LLC's and Counter-Defendant Bryan Gibel's Memorandum of Points and Authorities Regarding Issues to Be Tried to the Judge or Jury ("Gibel Br.") Dkt. No. 68 at 7.[2]  Mr. Gibel says the first time she disclosed her "inten[t] to pursue damages on her unjust enrichment claim" was in her expert's report after fact discovery closed, a disclosure Mr. Gibel attacks as "late" and "improper."  Gibel Br. at 7-8.  Mr. Gibel is wrong, and his argument fails for multiple reasons.

---

[2]  After setting up this strawman, Mr. Gibel reveals in footnotes 4 and 5 his reason for misstating Ms. Sandhu's claim (contrary to her clearly pled prayer for relief).  Mr. Gibel apparently believes an "'accounting' theory of unjust enrichment" to be preempted by the Copyright Act, and plans to seek summary judgment on that basis.  Gibel Br. at 7 n. 4, 8 n. 5.  But as set forth above, that is not what Ms. Sandhu pled, and her actual claim is in no way preempted.

*First*, Ms. Sandhu's unjust enrichment counterclaim expressly seeks the "reasonable value of her contributions," and specifically requests "***damages*** . . . in an amount to be determined at trial."  Amended Answer at Counterclaims ¶ 63 and Prayer for Relief ¶ 3.  Mr. Gibel is simply wrong about what Ms. Sandhu pled, as the counterclaim and prayer for relief themselves make plain.  Moreover, Ms. Sandhu's demand for money damages seeks a quintessential legal remedy.  *Dairy Queen*, 369 U.S. at 476 ("as the complaint requests a money judgment it presents a claim which is unquestionably legal"); *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213 (2002) (holding claims to "obtain a judgment [that] impose[s] a merely personal liability upon the defendant to pay a sum of money" are legal, not equitable (citation and internal quotation omitted)).

*Second*, contrary to Mr. Gibel's argument, Ms. Sandhu has been crystal clear in her demand for this legal remedy throughout the litigation.  Beyond just the counterclaim itself, for example, every Case Management Statement that Ms. Sandhu has filed in this case states that she seeks money damages for unjust enrichment—both before and after her other counterclaims were dismissed.  *See* Dkt. No. 34 at 8 (seeking "[a]n award of damages, including but not limited to compensatory and punitive damages, together with pre-judgment and post-judgment interest, in an amount to be determined at trial"); Dkt. No. 47 at 10 (same); Dkt. No. 60 at 2 (seeking "[a]n award of damages, including but not limited to compensatory damages, together with pre-judgment and post-judgment interest, in an amount to be determined at trial.").

*Third*, before filing this motion, Mr. Gibel actually ***confirmed*** Ms. Sandhu's unjust enrichment claim seeks payment of money damages (a legal remedy).  Explaining why he did not seek to dismiss this claim, for example, Mr. Gibel said:  "Focal Point also does not move to dismiss Sandhu's claim for ***unjust enrichment***, as Focal Point has always acknowledged Sandhu's ***right to be paid*** for her work."  Dkt. No. 31 at 1.  Mr. Gibel went on to state:  "To be clear, Focal Point is not seeking to hold Sandhu back . . . from ***being paid for*** the value of the work she contributed to the Film through ***her unjust enrichment counterclaim***, although it will dispute [this claim] on the merits."  Dkt. 39 at 1.  By repeatedly acknowledging that Ms.

6

Sandhu's unjust enrichment claim seeks "payment" for the work she contributed—including in a motion the Court granted no less—Mr. Gibel confirmed that Ms. Sandhu's claim is for money damages.[3]  Mr. Gibel should not be heard to argue the opposite now.  *See, e.g.*, *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) ("We have discretion to consider a statement made in briefs to be a judicial admission").

*Fourth*, Mr. Gibel's attempt to create distance between what he claims Ms. Sandhu originally pled (which Mr. Gibel wrongly recasts as an "accounting and disgorgement of profits") and her alleged "late disclosure of a new damages calculation" ignores the express remedies Ms. Sandhu requested.  Gibel Br. at 7-8.  Mr. Gibel makes no mention of paragraph 3 of Ms. Sandhu's Prayer for Relief.  Instead, his brief pretends that the only relief she seeks is "an order requiring Mr. Gibel and Focal Point to disgorge all profits and compensation improperly obtained by Mr. Gibel and Focal Point."  *Compare* Gibel Br. at 3-4 *with* Amended Answer at Prayer for Relief ¶ 3.  But that is simply not true.  Ms. Sandhu expressly requests "damages . . . in an amount to be determined at trial" as discussed above.  In short, Ms. Sandhu has consistently sought a legal remedy for unjust enrichment from the start of this case.

As this Court recognized, Ms. Sandhu's claim for unjust enrichment is "based on the theory that Sandhu worked without compensation because she understood that she would, as co-creator, receive a share of the profits."  Dkt. No. 54 at 18.  Ms. Sandhu's expectation that she would receive a share of the Film's profits (itself evidence that the parties treated each other as equal partners) is a reason *why* Ms. Sandhu "worked without compensation" for so long; it is not the *remedy* Ms. Sandhu seeks by virtue of her unjust enrichment claim.  Mr. Gibel's suggestion that Ms. Sandhu failed to seek money damages for her unjust enrichment claim—and that this is a "late" theory only disclosed after the close of fact discovery—is mistaken.[4]

---

[3] Mr. Gibel further acknowledged in two separate Case Management Statements that Ms. Sandhu's claim for unjust enrichment sought "compensation for the services she provided."  Dkt. No. 34 at 10; Dkt. No. 47 at 12.

[4] Not only is Mr. Gibel wrong to suggest that Ms. Sandhu made a "late disclosure" that "was improper" (Gibel Br. at 8 n. 5), his reliance on *Toyrrific, LLC v. Karapetian* is misplaced.  *First*, unlike Ms. Sandhu here, the plaintiff in *Toyrrific* made "no initial disclosures at all" and only

7

1

## II.    Ms. Sandhu Is Entitled to a Jury Trial on Her Unjust Enrichment Claim

2

Mr. Gibel contends that if Ms. Sandhu's claim for damages is allowed to proceed, this

3

claim is equitable in nature and no jury trial right attaches.  Mr. Gibel is again wrong.

4

Mr. Gibel relies heavily on an argument that, because unjust enrichment is "synonymous

5

with restitution," Ms. Sandhu has no right to try her claim to a jury.  Gibel Br. at 8 (internal

6

quotation and citations omitted).  Mr. Gibel's argument proceeds in two steps.  He first asserts

7

that Ms. Sandhu's unjust enrichment claim should be viewed as a claim for restitution.  *See id*.

8

He then argues that, in *Commerce Planet*, the Ninth Circuit "observed that the U.S. Supreme

9

Court 'has consistently stated that restitution is an equitable remedy for Seventh Amendment

10

purposes, without drawing any distinction between the legal and equitable forms of that relief.'"

11

*Id.* (quoting *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 602 (9th Cir. 2016)).  Based on this

12

two-step, Mr. Gibel concludes "that the Seventh Amendment does not afford Sandhu a right to

13

jury on this claim."  *Id.*

14

Mr. Gibel is incorrect both as to the governing law and the nature of Ms. Sandhu's claim.

15

The Supreme Court has carefully guarded a party's right to a jury trial, finding that

16

"[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a

17

place in our history and jurisprudence that any seeming curtailment of the right to a jury trial

18

should be scrutinized with the utmost care."  *Beacon Theatres*, 359 U.S. at 501 (quotation

19

omitted).  As such, all "doubts should be resolved in favor of maintenance of a jury."  *Quiksilver,*

20

*Inc. v. Kymsta Corp.*, No. CV 02-5497-VBF(MCX), 2007 WL 9712164, at *2 (C.D. Cal. Dec. 5,

21

2007).

22

23

---

24

stated its computation of damages for the first time about a month after the close of ***all*** discovery.
No. 2:12-CV-04499-ODW EX, 2013 WL 1628614, at *2-3 (C.D. Cal. Apr. 16, 2013), *rev'd and*

25

*remanded*, 606 Fed. App'x 365 (9th Cir. 2015).  By contrast, Ms. Sandhu pled a claim for
damages in her Amended Answer, requested money damages in her request for relief, confirmed

26

she sought monetary damages in every Case Management Statement that she filed, and served an
expert report consistent with her claim.  ***Second***, although unmentioned by Mr. Gibel, the Ninth

27

Circuit subsequently ***reversed*** the district court's exclusion of the damages evidence under Rule
37.  *Toyrrific, LLC v. Karapetian*, 606 Fed. App'x 365 (9th Cir. 2015).

28

Consistent with these principles, the Supreme Court has established a two-part test to determine if a particular claim is legal or equitable. *Tull v. United States*, 481 U.S. 412, 417 (1987). First, the court compares the claim "to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id*. Second, "the remedy sought" must be examined to "determine whether it is legal or equitable in nature." *Id*. at 417-18. Of the two parts to this test, the Supreme Court recognized the second—remedy sought—is far more outcome determinative. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 97 (1991). Applying this test, Ms. Sandhu's unjust enrichment claim is clearly a claim at law for money damages.

### A.  Unjust Enrichment Is Comparable to the Common Law Action of Assumpsit, a Claim at Law

"The modern formulation of the term 'unjust enrichment'" can be traced to the Restatement of Restitution, drafted in 1937 by the American Law Institute ("ALI"). *See Dastgheib v. Genentech,* 457 F. Supp. 2d 536, 542 (E.D. Pa. 2006). The ALI synthesized a combination of law and equity principles to note that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id*. (quoting Restatement of Restitution § 1 (1937)). As "a synthesis of both law and equity principles," unjust enrichment "was not per se available in the eighteenth-century." *Id*. Under these circumstances, the Supreme Court "has generally looked for an analogy to some action known when the Seventh Amendment was adopted." *Spinelli v. Gaughan*, 12 F.3d 853, 856 (9th Cir. 1993).

In the Ninth Circuit, unjust enrichment has been ruled most analogous to a quasi-contractual claim. *See* Gibel Br. at 8. Unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation omitted). "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id*. (internal quotation omitted). The Ninth Circuit has explained that while "[m]onetary restitution is appropriately characterized as

9

equitable when it is intended to restore to the plaintiff *particular* funds . . . in the defendant's possession,'" "monetary restitution is appropriately characterized as legal in actions that simply seek to impose *general personal liability* on a defendant for money allegedly owed to the plaintiff." *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 866 (9th Cir. 2017) (internal quotation omitted).

A "quasi-contract counterclaim, which seeks restitution in the form of money damages due to [counterclaim-defendant's] personal liability, is an *action at law* that is guided by equitable principles." *Jordan v. Wonderful Citrus Packing LLC*, No. 1:18-CV-00401-AWI-SAB, 2018 WL 4350080, at *5 (E.D. Cal. Sept. 10, 2018).[5] This is because a quasi-contractual claim is analogous to the eighteenth-century English action of assumpsit. *See id.* When a plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to *restitution at law* through an action derived from the common-law writ of *assumpsit*." *Great-West*, 534 U.S. at 213 (internal quotation omitted). "[A] suit in quasi-contract falls under the common law writ of general assumpsit. . . . Because general assumpsit was a legal action at common law, a suit in quasi-contract *requires a jury trial*." *Jordan*, 2018 WL 4350080, at *5 (quoting *Austin v. Shalala*, 994 F.2d 1170, 1176-77 (5th Cir. 1993)).

Ms. Sandhu contributed her skills as a producer, cinematographer, director, editor, photographer, promoter, and more to the Film in the absence of a written agreement. To prevent Mr. Gibel from being unjustly enriched by virtue of receipt of this work, the law thus imposes a contractual relationship between the parties. Ms. Sandhu's claim seeks a general liability judgment against Mr. Gibel for money damages; not restoration of particular assets in Mr. Gibel's possession. This quasi-contract claim, akin to an assumpsit action, is legal in nature.

---

[5] Tellingly, both *Bayer* (2017) and *Jordan (2018)* were decided after *Commerce Planet* (2016).

1

2

3

### B.    Mr. Gibel's Reliance On *Commerce Planet* Is Misplaced

As the foregoing discussion indicates, Mr. Gibel's reliance on *Commerce Planet* is erroneous for multiple reasons.

***First***, the discussion Mr. Gibel cites from *Commerce Planet* describes Justice Ginsburg's ***dissent*** in *Great-West*, not the controlling majority opinion.  *Commerce Planet*, 815 F.3d at 602. Contrary to Mr. Gibel, but consistent with both *Bayer* and *Jordan* cited above, the majority in *Great-West* held that "not all relief falling under the rubric of restitution is available in equity . . . 'restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case, and whether it is legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought."  *Great-West*, 534 U.S. at 212-13 (internal quotations omitted).  *Great-West* explained that claims to recover money for a benefit conferred are "considered legal" because they seek "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money . . . [s]uch claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied)."  *Id.* at 213 (internal quotation omitted).  That is exactly Ms. Sandhu's claim here.

***Second***, contrary to Mr. Gibel's argument, *Commerce Planet* does not purport to announce a universal rule for restitution claims.  Rather, in *Commerce Planet*, the Ninth Circuit addressed whether a specific form of equitable restitution was permitted under § 13(b) of the Federal Trade Commission Act of 1914 (15 U.S.C. § 53(b)).  It did not consider a common law unjust enrichment action at all.  In particular, the FTC sued Commerce Planet under § 5(a) of the FTC Act, a section prohibiting unfair or deceptive business practices.  *Commerce Planet*, 815 F.3d at 596-97.  The district court awarded the FTC both (1) prospective injunctive relief as authorized by § 13(b) of the FTC Act and (2) restitution for past harm.  *Id.* at 597-98.  The question on appeal was whether the district court had authority to award restitution given the FTC Act's silence about such a remedy.  *Id.*  Answering this question, the Ninth Circuit ruled that, in addition to the injunctive relief authorized by § 13(b), the FTC Act "also empowers district courts to grant any ancillary relief necessary to accomplish complete justice, including

restitution." *Id.* at 598 (internal quotation omitted).  Notably, it "grounded this holding" on *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), in which the Supreme Court analyzed a claim under section 205(a) of the Emergency Price Control Act of 1942 that sought both to "enjoin the defendant from charging excessive rents . . . and to obtain restitution of the excess rents already collected." *Commerce Planet*, 815 F.3d at 598.  While the defendant in *Porter* argued that § 205(a) did not authorize an award of restitution, the Supreme Court disagreed, holding "that by authorizing the issuance of injunctive relief, the statute invoked the court's equity jurisdiction, which carries with it 'all the inherent equitable powers of the District Court' unless the Act provided otherwise." *Commerce Planet*, 815 F.3d at 598 (quoting *Porter*, 328 U.S. at 398).  The restitution ordered in *Commerce Planet* was thus a creature of "[t]he equitable jurisdiction to enjoin future violations of § 5(a)" and explicitly linked to a court's equitable powers.  *Id.* at 599; *see also Great-West*, 534 U.S. at 213 (explaining that "restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case" (internal quotation omitted)).

Unlike *Commerce Planet,* Ms. Sandhu has brought an unjust enrichment claim at common law, and does not invoke the Court's general equity jurisdiction to support an award.  Rather, Ms. Sandhu's claim expressly seeks a judgment of money damages in an amount to be determined at trial.  Amended Answer at Counterclaims ¶ 63 and Prayer for Relief ¶ 3.  *Commerce Planet* thus does not control Ms. Sandhu's claim.

**C.     The Remedy Sought By Ms. Sandhu is Likewise Legal in Nature**

The Supreme Court has explained the "general rule [is] that monetary relief is legal" in the Seventh Amendment Analysis.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) (internal quotation omitted); *see also Dairy Queen*, 369 U.S. at 476 ("Petitioner's contention . . . is that insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal.  We agree with that contention."); *Great-West*, 534 U.S. at 213 (noting claims to obtain a judgment that imposes a mere personal liability upon the defendant to pay a sum of money are typically legal, not equitable).  Because Ms. Sandhu's

unjust enrichment claim seeks monetary damages for the reasons discussed in Part I above, it is legal in nature and must be tried to a jury.

*Dastgheib v. Genentech, Inc.* is instructive here.  *See* 457 F. Supp. 2d 536.  In *Dastgheib*, the plaintiff, a doctor, provided a biotechnology company, Genentech, with "samples and research materials" that Genentech used to develop a drug.  *Id*. at 537-38.  The plaintiff claimed that Genentech "represented that it would give Dastgheib recognition in the medical and scientific community for his scientific discovery, as well as one percent of gross sales of any drug that Genentech developed using Dastgheib's research."  *Id*. at 537.  When Genentech refused to pay, Dastgheib brought a claim for unjust enrichment seeking "damages commensurate with the benefit conferred upon Genentech" measured as "disgorgement of Genentech's profits derived from its use of Dastgheib's research materials."  *Id*. at 538.  Genentech argued this was an equitable claim, and moved to strike plaintiff's jury demand.  *Id*. at 539.  Applying the Supreme Court's two-part test, the *Dastgheib* court rejected this argument and held plaintiff's unjust enrichment claim to be legal in nature entitling plaintiff to a jury trial.  *Id.* at 546.

Under the first part of the Supreme Court's test, the *Dastgheib* court found plaintiff's claim was "indisputably [a] law case[]" because it was quasi-contractual, and a "quasi-contractual claim is akin to the assumpsit actions of eighteenth-century England."  *Id.* at 543 (internal quotation omitted).  Turning to the second part of the test, the court found that "the kind of relief Dastgheib seeks is . . . not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that [Dastgheib] conferred upon [Genentech]."  *Id.* at 544 (internal quotation omitted).  In other words, Dastgheib sought to recover a "money judgment in an amount equal to that gained by Genentech in using [Dastgheib's] research materials to develop a new drug."  *Id.*  The court distinguished Dastgheib's unjust enrichment claim from equitable claims where a plaintiff seeks recovery from particular money sources, such as "money that was specifically set aside" and

13

preserved in specific investment accounts or "recovery of a portion of a defined contingency fee that was to be paid to the defendant." *Id.* (citation omitted).

This same distinction applies here.  Ms. Sandhu's claim does not seek a constructive trust or equitable lien on some particular property owned by Mr. Gibel, but instead seeks to impose personal liability on Mr. Gibel in the form of a money judgment.  Ms. Sandhu's unjust enrichment claim is legal in nature for precisely this reason.  *Dairy Queen*, 369 U.S. at 476; *Dastgheib*, 457 F. Supp. 2d at 544.

## III.   Common Fact Questions Must Be Tried To The Jury

Ms. Sandhu's unjust enrichment claim and the parties' respective copyright claims each arise out of a common sequence of events and depend upon a common set of disputed facts. *Beacon Theatres* and *Dairy Queen* require all such common fact questions to be tried to a jury. Moreover, the jury must resolve all such common fact questions first, before the Court addresses any remaining fact dispute that relates solely to the parties' equitable claims.  Because Mr. Gibel's request to bifurcate and proceed solely on equitable questions first would turn *Beacon Theatres* and *Dairy Queen* on their head, it should be rejected.

### A.   Bifurcating the Trial to Hear the Parties' Declaratory Judgment Claims First Would Violate Supreme Court Precedent

Mr. Gibel argues that if the Court determines that Ms. Sandhu's unjust enrichment claim should be heard by a jury, the Court should nonetheless, pursuant to Federal Rule of Civil Procedure 42, order separate trials of the declaratory judgement claims and Ms. Sandhu's unjust enrichment claim.  Gibel Br. at 9-10.  Mr. Gibel contends that Ms. Sandhu's declaratory judgment and unjust enrichment claims are "entirely independent from one another" and argues that if a jury is permitted to hear Ms. Sandhu's claim for joint authorship, the jury might be prone to "inflat[e] damages on her unjust enrichment claim."[6]  *Id.*  While conceding the "general rule"

---

[6]  Notably, Mr. Gibel's assertion proves the opposite.  The value of Ms. Sandhu's contributions to the Film is surely tied to the centrality of her role on the film, exactly as Mr. Gibel postulates a jury might find.

14

that a legal claim is heard prior to an equitable claim, *id.* at 10, Mr. Gibel nonetheless contends that the Court should deviate from this general rule here.

Mr. Gibel is incorrect, and indeed provides no explanation or analysis of the law from which he seeks to depart.  What Mr. Gibel downgrades to a mere "general rule" is in fact the Constitutional right to a jury trial in civil cases.  The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."  U.S. Const. amend. VII.  "The federal policy favoring jury trials is of historic and continuing strength."  *Simler v. Conner*, 372 U.S. 221, 222 (1963).  "Because the right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution, courts should indulge every reasonable presumption against waiver."  *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981).

As the Supreme Court has made clear, "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."  *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970).  When a court is confronted with issues that are common between legal and equitable claims, "the legal claims involved in the action must be determined prior to any final court determination of respondents' equitable claims."  *Dairy Queen*, 369 U.S. at 479; *see also Beacon Theatres*, 359 U.S. at 508-11.  Were a court to do otherwise, it would risk a situation whereby "[p]rior nonjury trial of the equitable claims may infringe the right to jury trial on the legal claims because of the collateral estoppel or res judicata effect of a prior judicial determination of issues common to the two sets of claims."  *Calnetics Corp. v. Volkswagen of Am., Inc.*, 532 F.2d 674, 690 (9th Cir. 1976).

### B.    Common Fact Questions Predominate Both Claims Here

The core fact dispute for both Ms. Sandhu's unjust enrichment claim and the parties' respective declaratory judgment claims is the same:  what was Ms. Sandhu's role on the Film?

For example, in the absence of a contract between potential joint authors, courts look to three primary factors to determine whether a copywritten work has joint authors:  (1) "whether

the 'putative coauthors ma[de] objective manifestations of a shared intent to be coauthors,'" (2) "whether the alleged author superintended the work by exercising control," and (3) "whether 'the audience appeal of the work' can be attributed to both authors, and whether 'the share of each in its success cannot be appraised.'"  *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (quoting *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)).  The disputed facts probative of each of these *Aalmuhammed* factors are the ***same*** facts that establish both (1) the nature of the benefits Ms. Sandhu conferred upon Mr. Gibel, and (2) that Mr. Gibel has unjustly retained these benefits at Ms. Sandhu's expense (i.e., the same facts that establish the elements of unjust enrichment).  *ESG Capital*, 828 F.3d at 1038.  For both claims, the parties must establish the role or roles that Ms. Sandhu played in the Film's development, production, shooting, and promotion.

Thus, evidence showing that Ms. Sandhu jointly developed the narrative story of the Film, shot valuable footage, produced and directed Film scenes, participated in interviews for the Film, assisted in promoting the Film, and was involved in putting together grant applications and Film budgets is probative both of whether (1) Mr. Gibel "received and unjustly retained a benefit at [Ms. Sandhu's] expense," *id.* at 1038, ***and*** (2) Ms. Sandhu "superintended the work by exercising control."  *Richlin*, 531 F.3d at 968.  Similarly, evidence that Ms. Sandhu's contributions led to the Film's fundraising successes and its industry acclaim is relevant to both (1) the value of the contributions Mr. Gibel unjustly retained (unjust enrichment claim, *ESG Capital*, 828 F.3d at 1038, ***and*** (2) the "audience appeal" of the work attributable to Ms. Sandhu (*Richlin*, 531 F.3d at 968 (factor 3)).

Mr. Gibel would reduce "valuing Sandhu's unjust enrichment claim" to a mere "matter of simple multiplication of her hours or days worked times the appropriate rate."  Gibel Br. at 9. But this over-simplification ignores a host of fact questions that must be answered for this "simple multiplication" to take place – each of which bears also on the parties' copyright dispute. For example:  What was the nature of the parties working relationship, and what did they tell each other about their "partnership" in the Film?  How many days did Ms. Sandhu work in each

16

of her various roles, and what work did she perform?  When was Ms. Sandhu acting as a director, and what importance do the scenes she directed have for the storyline of the Film?  When was she acting as a Producer, and what value attaches to the work she produced?  When did she exert creative control, and over what aspects of the Film's creation was her control exerted?  Which scenes did she shoot, and what was her role shooting those scenes?  What footage did Ms. Sandhu create, and with respect to which of the Film characters and plotlines?  How were Ms. Sandhu's and Mr. Gibel's roles different from the work-for-hire members of the Film's crew?  And how does the documentary film industry value each of Ms. Sandhu contributions?  Each of these fact questions (and more) bear on the nature of the benefit(s) Ms. Sandhu provided to Mr. Gibel that he has unjustly retained.  But just as importantly, each also bears on the *Aalmuhammed* factors outlined above – including the parties' manifestations of intent toward one another, Ms. Sandhu's superintendence of and control over the work, and her contributions to what made the Film appealing (including why no one would grant funding to Mr. Gibel's prior Reid's Records concept, and why all competitive grants came only after Ms. Sandhu made her contributions).  *Richlin*, 531 F.3d at 968.

In short, Ms. Sandhu's evidence that she was involved in the creative direction of the project and her work in this regard support both the amount of money that is properly due to her and her control over the work as a whole.  These factors necessarily involve the same chronology of factual events as the elements Ms. Sandhu will address in her unjust enrichment claim.  Indeed, Mr. Gibel implicitly admits as much.  By acknowledging that a jury's damages award may be affected by evidence bearing on Ms. Sandhu's copyright claim (Gibel Br. at 10), Mr. Gibel tacitly recognizes that the evidence relevant to both claims is the same.  The greater Ms. Sandhu's contribution to the Film, the more value she added and the more money she is owed.

Because Ms. Sandhu's unjust enrichment claim is legal in nature and shares common factual issues with the parties' declaratory judgment claims, Ms. Sandhu's unjust enrichment claim "must be determined prior" to the determination of the parties' equitable claims—and must be decided by a jury.  *See Dairy Queen*, 369 U.S. at 476-77, 479 (holding that the district court

1  erred in refusing to grant the petitioner's demand for a jury trial on "the factual issues related to

2  the question of whether there has been a breach of contract" when these factual issues were

3  "common with those" upon which respondents' claim to equitable relief was based); *see also*

4  *Everett H by & through Havey v. Dry Creek Joint Elementary Sch. Dist., Bd. of Trustees of Dry*

5  *Creek Joint Elementary Sch. Dist.*, No. 2:13-CV-00889-MCE-DB, 2017 WL 2081217, at *2

6  (E.D. Cal. May 15, 2017) (holding that legal and equitable issues that raised "similar factual

7  issues" were intertwined such that "a bench trial on any of the claims raises the danger of

8  abrogating Plaintiffs' right to a jury trial on other claims.").

9        **C.**    **Severing Ms. Sandhu's Claims and Holding a Jury Trial on Only One Would**
                **Be a Waste of Judicial Resources and Undermine the Principal of Judicial**

10                 **Economy**

11       In addition to being unlawful under *Beacon Theatres* and *Dairy Queen*, Mr. Gibel's

12 request to bifurcate the trial and hear his equitable claim first is impractical, inefficient, and risks

13 inconsistent judgements.  "In the Ninth Circuit, 'Bifurcation . . . is the exception rather than the

14 rule of normal trial procedure.'"  *GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, No.

15 C 09-01484 SI, 2010 WL 1729400, at *3 (N.D. Cal. Apr. 27, 2010) (citation omitted).

16 "Bifurcation should be ordered only when the separation will result in judicial economy and will

17 not unduly prejudice any party."  *Datel Holdings LTD. v. Microsoft Corp.*, No. C-09-05535

18 EDL, 2010 WL 3910344, at *2 (N.D. Cal. Oct. 4, 2010).

19       As the party seeking bifurcation, Mr. Gibel "has the burden to prove that it is warranted

20 in [this] particular case."  *GEM*, 2010 WL 1729400, at *2.  But Mr. Gibel has fallen far short of

21 meeting this burden here, even ignoring the waste of judicial and party resources that his request

22 to bifurcate would engender.  Indeed, the best Mr. Gibel can muster is to contend that there will

23 be no waste of judicial resources if Mr. Gibel ***loses*** his declaratory judgment complaint and Ms.

24 Sandhu is found to be a joint author.  Gibel Br. at 10 (arguing Ms. Sandhu will get the value of

25 her "sweat equity" through her status as a co-author of the Film).  While Ms. Sandhu certainly

26 hopes for that outcome on the merits, if Mr. Gibel truly believed that to be the most likely

27 outcome then he should never have filed his declaratory judgment complaint to begin with.

28

18

More to the point, if Mr. Gibel does not genuinely believe that outcome likely, then he is in effect arguing for two trials on the same common set of operative facts—a vastly wasteful outcome at the trial level, and exactly what *Beacon Theatres* and *Dairy Queen* prohibit.[7]

By far the most efficient course of action, consistent with *Beacon Theatres* and *Dairy Queen*, is to try this case once before a jury.  The jury could decide all common factual disputes underlying the parties' respective claims, including reaching a verdict as to the damages owed Ms. Sandhu.  Indeed, to the extent the Court would find such a verdict helpful, the Court also has clear authority to permit the jury to reach an advisory verdict on the copyright issues.  *See, e.g.*, Fed. R. Civ. P. 39(c) ("In an action not triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory jury."); *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1013 (9th Cir. 2010) ("A trial court, sitting in equity, may nevertheless employ an advisory jury."); *Sweeney v. Chang*, No. 216CV07240CASRAOX, 2019 WL 1431583, at *6 (C.D. Cal. Mar. 26, 2019) (declining to bifurcate plaintiff's request for equitable relief under Title VII of the Civil Rights Act of 1964 and plaintiff's age discrimination claim and instead holding the jury's verdict will be advisory as to these issues).  That course should be followed here.

### Conclusion

For the foregoing reasons, the Court should decline Mr. Gibel's invitation to reconsider its previous order and should allow this case to continue to be held before a jury.

---

[7]  Mr. Gibel is incorrect that Ms. Sandhu's unjust enrichment claim would be mooted by a judgment for Ms. Sandhu on her declaratory judgment claim.  For example, Ms. Sandhu incurred thousands of dollars of unreimbursed expenses while working on the Film.  *See* Gibel Br. Ex. 3 (Dkt. No. 68-3) at 15 (Expert report of Sarah Rinke noting reimbursement of expenses occurred by Ms. Sandhu while working on the Film).  These expenses remain due to Ms. Sandhu regardless of whether she is a co-author of the work.

19

1   Dated: April 24, 2020                    Respectfully submitted,

2

3                                            By: */s/ James M. Dowd*

4                                            James M. Dowd
                                             WILMER CUTLER PICKERING
5                                            HALE AND DORR LLP
                                             350 South Grand Avenue, Suite 2100
6                                            Los Angeles, CA 90071
                                             Tel: (213) 443-5300 / Fax: (213) 443-5400
7

8
                                             Attorney for Defendant ARJOT SANDHU
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION REGARDING ISSUES TO BE TRIED TO THE JUDGE OR JURY
3:19-cv-02898-JCS

1

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 24, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.5.

*/s/ James M. Dowd*
James M. Dowd

-1-